IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY**, a Delaware corporation,<br><br>              Plaintiff,<br><br>v.<br><br>**COUNTY MAYO CORPORATION**, an Illinois company, **MICHIGAN BUILDING CORPORATION, INC.**, an Illinois company, and **MAUREEN A. JOYCE**, an individual,<br><br>              Defendants. | Civil Action No. 2:16-cv-11774 |

| | |
|---|---|
| GREGORY D. PHILLIPS (USB 4645)<br>**PHILLIPS RYTHER & WINCHESTER**<br>124 South 600 East<br>Salt Lake City, Utah 84102<br>Tel:   (801) 935-4935<br>Fax:   (801) 935-4936 | PETER N. TASSIE (P55110)<br>**FORD MOTOR COMPANY**<br>Fairlane Plaza South<br>330 Town Center Drive, Suite 800<br>Dearborn, MI 48126<br>Tel:   (313) 248-7736<br>Fax:   (313) 322-7162 |

Attorneys for Plaintiffs

## COMPLAINT

Plaintiff Ford Motor Company ("Ford") alleges as follows for its complaint

against defendants County Mayo Corporation, Michigan Building Corporation,

Inc. and Maureen A. Joyce (collectively "Defendants") as follows:

## PARTIES

1.      Ford is a Delaware corporation with its principal place of business in
Dearborn, Michigan.

2.      County Mayo Corporation is an Illinois company with its principal
place of business in Chicago, Illinois.

3.      Michigan Building Corporation, Inc. is an Illinois company with its
principal place of business in Chicago, Illinois.

4.      Maureen A. Joyce is an individual and principal of the above-
referenced business entities.  Upon information and belief, Maureen A. Joyce
resides in or near Chicago, Illinois and is a moving, active conscious force behind
Defendants' infringement.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28
U.S.C. §§ 1331, 1338(a), 1367, and 2201, and 15 U.S.C. §§ 1119 and 1121(a), in
that this case arises under the trademark laws of the United States or are so related
to claims arising under federal law that they form part of the same case or
controversy under Article III of the United States Constitution.

6.      The Court also has jurisdiction pursuant to diversity jurisdiction
under 28 U.S.C. § 1332(a) (1) in that Ford and the Defendants are citizens of

2

different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

7.     In addition, this action arises out of wrongful acts committed by Defendants that are intentionally targeted at Ford in this District and that subject Defendants to personal jurisdiction here.  The violation of the trademark holder's trademark rights occurs where the trademark holder resides, which is in this District.  Venue is proper under 28 U.S.C. § 1391.

## SUBSTANCE OF THE ACTION

8.     This is an action for false designation of origin under the Lanham Act (15 U.S.C. § 1125(a)), and for related claims arising from a Ford Dealership Identification Program Agreement ("Agreement") between Ford and the Defendants.  The Agreement defines the rights and obligations of the parties as they relate to Ford Brand Signs (i.e. signs bearing or consisting of the Ford Marks) located on and affixed to Defendants' property.  Defendants have materially breached the Agreement.  A copy of the Agreement is attached as Exhibit A.

9.     Ford began using the FORD IN SCRIPT IN OVAL® trademark in commerce in 1966, and first obtained a registration for this trademark with the United States Patent and Trademark Office ("USPTO") back in 1986.  Ford has also registered numerous variations of the FORD IN SCRIPT IN OVAL® trademark with the USPTO, including the FORD BLUE OVAL® logo among others.  Representative registration certificates awarded to Ford by the USPTO for

3

the relevant trademarks at issue in this case are attached as Exhibit B.

10.     Ford's registrations for these trademarks are valid, unrevoked, subsisting, and incontestable, and constitute *prima facie* evidence of Ford's exclusive ownership of such marks and that the marks have acquired secondary meaning.  The registered trademarks are collectively referred to hereafter as the "Ford Marks."

11.     Ford prominently displays the Ford Marks in its advertisements and at each location of its network of authorized Ford Dealerships.

12.     Ford has continuously used the Ford Marks in connection with the promotion, advertising, and sale of automobiles and other products and services since well before the acts of Defendants complained of herein.

13.     Ford has spent millions of dollars and has expended significant effort in advertising, promoting, and developing the Ford Marks throughout the world. As a result of such advertising and expenditures, Ford has established considerable good will in the Ford Marks.  The Ford Marks have become widely known and recognized throughout the world as symbols of high quality automotive goods and services.   The Ford Marks are world-famous and distinctive, and have become associated by the consuming public exclusively with Ford.  The Ford Marks are an invaluable asset of substantial and inestimable worth to Ford.

14.     Defendants first came into possession of signs bearing or consisting of

4

the Ford Marks (hereinafter referred to as the "Ford Brand Signs") on or after September 20, 2000, when Defendant Maureen A. Joyce was awarded a Ford dealership license by Ford.

15.    Defendant Maureen A. Joyce formed and operated the Ford franchise under a now defunct Illinois corporation named Joyce Ford, Inc.

16.    On or about May 16, 2012, the agreement between Ford, Defendant Maureen A. Joyce, and Joyce Ford, Inc. terminated.

17.    Pursuant to an Agreement between Ford and Fox Ford Lincoln, on January 18, 2013, and before Joyce Ford, Inc. relinquished the Ford Brand Signs to Ford, Fox Ford Lincoln became a new licensed Ford dealership in the Chicago area.

18.    Because Defendants' property was still available at that time, Defendants, Ford, and Fox Ford Lincoln agreed that Fox Ford Lincoln could use the Defendants' property as the temporary location for its Ford dealership while Fox Ford Lincoln's new dealership facility was being built.

19.    On October 26, 2012, Ford and Defendants entered into the Agreement.  In the Agreement, Defendants were identified as the landlords for the new Fox Ford Lincoln dealership that was housed on Defendants' property. *See* Exhibit A.

20.    The Agreement specifies Defendants' property as the location for Fox

Ford Lincoln's dealership, and includes terms that define the ownership and

interest of the parties as they relate to the Ford Brand Signs displayed on the

Defendants' property.  The relevant language of the Agreement states as follows:

> (I) That [Ford] may Install and remove the Brand Sign, and other New
> Signs, handle Old Signs and make reinforcements or repairs in connection
> therewith at the Dealer's Facilities as provided in said Agreement and upon
> the representation of [Ford] that as provided in said Agreement it will repair
> at its own expense any damage to the Dealer's Facilities caused by any such
> action taken by it, and (II) that the undersigned Interest holder will not claim
> any ownership, mortgage, security or other interest in the identified signs.

*Id*.

21.     Under the terms of the Agreement, Defendants agreed to allow Ford

to install, remove, handle, make reinforcements for, or repair Ford Brand Signs on

the Defendants' property, and that Defendants would not claim any ownership,

mortgage, security interest, or other interest in the Ford Brand Signs.  *Id*.

## BREACHES AND TERMINATION OF THE LICENSE AGREEMENT

22.     On or about August 31, 2015, Ford, through its Chicago Region

Market Representation Manager Will Krill, contacted Defendant Maureen A. Joyce

and notified her that Ford intended to come to the Defendants' property to remove

and reclaim the Ford Brand Signs that were displayed on said property.

23.     Defendant Maureen A. Joyce asserted that she owned the sign and

would not relinquish it until Ford paid her an undisclosed amount of money.

24.     Upon information and belief, Defendant Maureen A. Joyce then

threatened to sell the sign to another dealer if Ford did not give her money for the sign.

25.     On or about September 1, 2015, Fox Ford Lincoln moved its location from Defendants' property to its newly built dealership facility.

26.     Also on September 1, 2015, Ford sent an email notice to Defendant Maureen A. Joyce informing Defendants that, due to the relocation of the Fox Ford Lincoln dealership to its new location, Ford was coming to Defendants' property to remove the Ford oval and column cladding between Sept. 1 - Sept. 15th, 2015 at Ford's expense.

27.     In an email to Mr. Krill of the same date, Defendant Maureen A. Joyce responded, stating:

> Ford Motor Company or any one associated or hired bywith [*sic*] Ford Motor Company DOES NOT have permission to go onto the property. I purchased the sign. I own it. I was told by Ford that I would be reimbursed for sign. Maureen Joyce.

A true and correct copy of the email exchange between Ford and Defendant Maureen A. Joyce is attached hereto as Exhibit C.

28.     On September 2, 2015, Ford sent Defendant Maureen A. Joyce a follow-up email explaining the terms of the above-referenced Agreement and provided her with an explanation of Ford's right to remove and reclaim the signs from Defendants' property as specified by the Agreement.  A true and correct copy of Ford's follow-up email is attached hereto as Exhibit D.

7

29.     Despite the terms of the Agreement with Ford, Defendants have refused to relinquish the Ford Brand Signs and continue to demand that Ford pay Defendants for the signs or Defendants will sell the signs to a third-party without Ford's authorization.

30.     Ford is still forbidden by Defendants to enter the Defendants' property to retrieve the Ford Brand Signs which remain displayed there, forcing Ford to file this lawsuit.

## FIRST CLAIM FOR RELIEF
(FALSE DESIGNATION OF ORIGIN 15 U.S.C. § 1125(a))

31.     Ford realleges and incorporates herein the allegations above.

32.     Following the termination of the Agreement, Defendants have continued to display the Ford Marks on Defendants' property and have refused to allow Ford to enter the property to reclaim the Ford Brand Signs or to regain control over the Ford Marks.

33.     Defendants' continued use and refusal to relinquish control of the Ford Marks after termination of the Agreement is likely to confuse, mislead or deceive customers, purchasers, and members of the general public to believe in error that Defendants are still authorized, sponsored, approved, endorsed, or licensed by Ford or that Defendants are in some way still affiliated with Ford.

34.     Defendants' acts constitute false or misleading descriptions, false advertising, and false designations of the origin and/or sponsorship of Defendants'

8

goods and services in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

35.     By reason of Defendants' actions, Ford has suffered irreparable harm. Unless Defendants are restrained from their actions, Ford will continue to be irreparably harmed.

36.     Ford has no remedy at law that will compensate for the continued and irreparable harm that will be caused if Defendants' acts are allowed to continue.

37.     As a direct and proximate result of Defendants' conduct, Ford is entitled to damages, treble damages, statutory damages, and the equitable remedy of an injunction requiring Defendants to deliver the signs bearing the Ford Marks to Ford or allow Ford to reclaim the same, and Ford's attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF
(TRADEMARK DILUTION 15 U.S.C. § 1125(c))

38.     Ford realleges and incorporates herein the allegations above.

39.     Ford has extensively and exclusively used the Ford Marks in commerce for decades.

40.     The Ford Marks are famous trademarks that are inherently distinctive and have acquired substantial renown.

41.     Defendants' unauthorized and unlawful use of the Ford Marks dilutes the distinctive quality of and tarnishes the Ford marks in violation of 15 U.S.C. §

9

1125(c) (1).

42.     As a direct and proximate result of Defendants' conduct, Ford has suffered irreparable harm.  Unless Defendants are restrained from further dilution of the Ford Marks, Ford will continue to be irreparably harmed.

43.     Ford has no adequate remedy at law that will compensate for the continued irreparable harm it will suffer if Defendants' acts are allowed to continue.

44.     As a direct and proximate result of Defendants' conduct, Ford has also suffered damages in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF
(BREACH OF CONTRACT)

45.     Ford realleges and incorporates herein the allegations above.

46.     As outlined above and in the communications and notices provided to Defendants by Ford, Defendants have materially breached their obligations to Ford under the Agreement.

47.     As a direct and proximate result of Defendants' conduct, Ford has suffered damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
(CONVERSION)

48.     Ford realleges and incorporates herein the allegations above.

49.     Pursuant to the terms of the Agreement as explained above, Ford has a

clear legal ownership or right to possession of the Ford Brand Signs and the Ford Marks.

50.     Defendants have refused to relinquish the Ford Brand Signs and the Ford Marks to Ford and continue to exercise dominion and control over the same, despite their knowledge of Ford's ownership and legal right to possess and control the Ford Brand Signs and Ford Marks.

51.     Defendants' refusal to relinquish the Ford Brand Signs to Ford has deprived Ford of the possession and use of the Ford Brand Signs and Ford Marks.

52.     As a direct and proximate result of Defendants' conduct, Ford has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Ford prays for relief against Defendants as follows:

1.     That a permanent injunction be issued enjoining Defendants, Defendants' employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunctions, from:

(a)     displaying or making unauthorized use of signs or other materials that bear or consist of the Ford Marks;

(b)     selling, offering for sale, advertising, promoting or displaying the signs bearing or consisting of the Ford Marks;

11

(c)     using the signs bearing or consisting of the Ford Marks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any other goods or services;

(d)     transferring, consigning, selling, shipping or otherwise moving any goods, packaging, sign or other materials in Defendants' possession, custody or control bearing or consisting of the Ford Marks; and

(e)     instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (d) above.

2.      For entry of judgment and award of damages against Defendants for false designation of source or origin under the Lanham Act, 15 U.S.C. § 1125(a).

3.      For entry of judgment and award of damages against Defendants for dilution of the Ford Marks under the Lanham Act, 15 U.S.C. § 1125(c).

4.      For a judgment against Defendants ordering the equitable remedy of a permanent injunction requiring Defendants to deliver to Ford or allow Ford to enter the Defendants' property to reclaim and gain control of the signs and other materials bearing or consisting of the Ford Marks.

5.      For an award of all actual damages caused by the acts of Defendants breach of contract as pled in this Complaint.

6.      For an award of actual damages caused by the Defendants' acts

12

constituting conversion as pled in this Complaint.

7.      For an award of Ford's costs and disbursements incurred in this

action, including Ford's reasonable attorneys' fees.

8.      For such other and further relief as the Court may deem just and

proper.

DATED this 18th day of May, 2016.

Gregory D. Phillips
PHILLIPS, RYTHER & WINCHESTER

By:    /s/ Gregory D. Phillips
Gregory D. Phillips
*Attorneys for Plaintiff Ford Motor Company*